UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

PRESTON BERMAN,

      Plaintiff,

  v.

PSYCHIATRIC SECURITY REVIEW
BOARD; ALISON BORT in her official
capacity as Executive Director of the Oregon
Psychiatric Security Review Board,

      Defendants.

Case No. 6:24-cv-01127-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

    Self-represented Plaintiff Preston Berman[1] filed this action against Defendants

Psychiatric Security Review Board ("PSRB") and Alison Bort, alleging violations of Title II of

the Americans with Disabilities Act ("ADA") and Plaintiff's right to Due Process under the

Fourteenth Amendment. Before the Court is Defendants' Motion to Dismiss (ECF No. 23). For

the following reasons, Defendants' motion is denied in part and granted in part.

---

[1] The Court uses they/them pronouns to refer to Plaintiff throughout this opinion and order
because those are the pronouns most recently used by Plaintiff in their opposition to Defendants'
motion.

## BACKGROUND

Plaintiff is an individual who has been under the jurisdiction of Defendant Psychiatric Security Review Board ("PSRB") since being adjudicated in 2010 of Arson, Burglary, and Reckless Burning and deemed guilty except for insanity. Compl. ¶¶ 3-4, ECF No. 1. Plaintiff has Bipolar Disorder and alleges that the crime underlying their commitment was a suicide attempt involving fire. *Id.* ¶¶ 8, 12.

Over their 14 years under PSRB jurisdiction, they have spent five years on conditional release and nine segregated with other mentally disabled individuals at Oregon State Hospital ("OSH"). *Id.* ¶ 19. Previous conditional releases were revoked, most recently in 2021. *Id.* ¶¶ 22-35. Plaintiff has been segregated at OSH since October 2021. *Id.* ¶¶ 35-36. At some unalleged time, Plaintiff mentally stabilized and their attending physician and treatment team petitioned for Plaintiff's conditional release. *Id.* ¶ 42. They are currently in the process of "stepping down" to a group home, but Plaintiff alleges that the group home will still be segregated per PSRB policy. *Id.* ¶¶ 42-43.

Plaintiff wishes to be provided desegregated community-based treatment in Windermere, Florida, where their family lives. *Id.* ¶¶ 12-14. They allege that their treatment providers found such care appropriate and that their continued segregation contradicts those providers' recommendations. *Id.* ¶¶ 14, 85-86. They allege that Defendant PSRB and its executive director, Defendant Alison Bort, discriminated against them in violation of the ADA and violated their Due Process rights under the Fourteenth Amendment.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## DISCUSSION

Defendants move to dismiss both of Plaintiff's claims for relief. The Court addresses each in turn.

## I.      Count I: Violation of Title II of ADA

Defendants make two arguments that Plaintiff's ADA claim should be dismissed. First, they argue that the Court lacks jurisdiction over the claim because Plaintiff failed to exhaust administrative remedies. Second, they argue that Plaintiff's Complaint fails to state a claim under the ADA.

### A.      Exhaustion of Administrative Remedies

Defendants first argue that the Court lacks jurisdiction over Plaintiff's ADA claim because the process available to Plaintiff to object or appeal a decision of the PSRB is statutory,

and jurisdiction lies with the Oregon Court of Appeals. Defendants argue that because Plaintiff did not follow the prescribed administrative procedure under Or. Rev. Stat. § ("ORS") 161.290 *et seq.*, they have not exhausted their administrative remedies and the Court lacks jurisdiction.

Defendants cite various Oregon Court of Appeals and Oregon Supreme Court cases discussing the general concept of exhaustion of administrative remedies. But none of these cases speak to whether exhaustion of state administrative remedies is required to bring an ADA claim. Indeed, the Ninth Circuit has held that "[t]here is no exhaustion requirement for claims brought under Title II of the ADA." *Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir. 1999) (citation omitted). While other statutes can impose exhaustion requirements under certain circumstances, *see e.g.* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted), Defendants have cited no such statute or authority here. Because Defendants have not cited any authority requiring exhaustion of state administrative remedies before pursuing a federal claim under Title II of the ADA in the present circumstances, Defendants' motion to dismiss on this basis is denied.

### B.    Failure to State an ADA Claim

Defendants also argue that Plaintiff has failed to plead an ADA claim. Title II of the ADA provides that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. One of the regulations implementing Title II of the ADA provides that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). A public entity must

make reasonable modifications to avoid discrimination "unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

Plaintiff's ADA claim is based on the Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). *Olmstead* concerned two women who were institutionalized for mental health disorders. *Id.* at 593. Both women's treating providers found that community-based programs rather than institutionalization would be appropriate. *Id.* Nevertheless, they remained institutionalized due to lack of funding. *Id.* at 594-95. The Court held that:

> States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities.

*Id.* at 607.

Defendants argue that *Olmstead* does not provide a basis for Plaintiff's claim here, because unlike in that case, "Plaintiff's treating physicians are not convinced that Plaintiff is ready—yet—to attempt a less-restrictive environment." Def. Mot. 7. They emphasize that the *Olmstead* decision explained "nothing in the ADA or its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings." *Id.* at 602. But critically, in *Olmstead* there was "no genuine dispute concerning the status of [the plaintiffs] as individuals 'qualified' for noninstitutional care [because t]he State's own professionals determined that community-based treatment would be appropriate for [the plaintiffs]." *Id.* Here, Defendants ignore that Plaintiff explicitly pled that treatment providers "found that community-based placement is appropriate," that evaluations "confirm[] his readiness for community-based treatment," and that continued segregation "contradicts the recommendations of his treatment providers." Compl. ¶¶ 14, 85-86. While

Plaintiff did attach exhibits to their Complaint that are equivocal as to Plaintiff's qualification for noninstitutional care, there is nothing in the pleadings to indicate those exhibits are the entirety of Plaintiff's providers' statements with respect to Plaintiff's qualifications.

In sum, *Olmstead* provides that community-based treatment must be reasonably accommodated when recommended by treatment providers and unopposed by the affected person. As noted above, Plaintiff has pled that their treatment providers determined community-based treatment was appropriate. Taking Plaintiff's allegations as true and in the light most favorable to them, it is plausible that Plaintiff qualified for—and that Defendants were therefore required to reasonably accommodate—the community-based treatment recommended. It is for discovery to determine whether there is a question of fact that Plaintiffs' treating providers recommended community-based treatment as pled. Plaintiff has likewise pled the other elements of an *Olmstead* claim: that they do not oppose the treatment and that it can be reasonably accommodated. Compl. ¶¶ 87-88. Defendant's motion to dismiss Count I of Plaintiff's Complaint on this basis is therefore denied.

## II.    Count II: Violation of Due Process

Defendants make two arguments that Plaintiff's Due Process claim should be dismissed. First, they argue that the claim is barred by the Eleventh Amendment. Second, they argue that Plaintiff's Complaint fails to state a claim for violation of Due Process.

### A.    Eleventh Amendment

Defendants argue that Plaintiff's Due Process claim is barred by the Eleventh Amendment. Plaintiff contends that this case falls within the "*Ex parte Young*" exception to Eleventh Amendment immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

State." U.S. Const. amend. XI. "The Eleventh Amendment erects a general bar against federal

lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). "It does not,

however, bar actions for prospective declaratory or injunctive relief against state officers in their

official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action

v. Brown*, 674 F.3d 1128, 1133–34 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155–56,

(1908)). "To bring such a claim, the plaintiff must identify a practice, policy, or procedure that

animates the constitutional violation at issue." *Arizona Students' Ass'n v. Arizona Bd. of Regents*,

824 F.3d 858, 865 (9th Cir. 2016) (citations omitted).

Plaintiff here alleges that Defendant PSRB's recent amendment to Or. Admin. R. 859-

010-0005 violates their Due Process rights. They argue that because the amendment results in an

ongoing violation of their Due Process rights, their claim against Defendant Bort falls within the

*Ex parte Young* exception. Defendants contend that Plaintiff is not alleging a violation of federal

law but rather is challenging Defendant PSRB's application of a state agency rule (i.e., that

PSRB is violating state law). Based on that reframing of Plaintiff's allegations, Defendants

contend that Plaintiff is actually challenging a state law, and that Plaintiff's claim is therefore not

within the *Ex parte Young* exception to Eleventh Amendment Immunity.

Defendants' attempt to reframe Plaintiff's Due Process claim fails. Plaintiff has pled that

the rule change has resulted in ongoing violations of their Due Process rights. Plaintiff is not

alleging a violation of state law; they are alleging that state law (the rule at issue) violates federal

constitutional law (the Due Process clause). In other words, Defendant Bort's application of the

rule at issue "animates the constitutional violation" Plaintiff asserts. *See Arizona Students' Ass'n*,

824 F.3d at 865. Plaintiff's Due Process claim against Defendant Bort is therefore squarely

within the *Ex parte Young* exception and not barred by the Eleventh Amendment. However, the *Ex parte Young* exception does not apply to states and their instrumentalities and the Due Process claim against Defendant PSRB is therefore dismissed as barred by the Eleventh Amendment.

      **B.      Failure to State a Due Process Claim**

      Defendants also move to dismiss Plaintiff's Due Process claim for failure to state a claim. Plaintiff's Due Process claim alleges that recent amendments to PSRB regulations which they allege "allow[] for the indefinite detention of individuals without demonstrating that their mental illness is the direct cause of their dangerousness, resulting in arbitrary and unjustified deprivation of liberty." Compl. ¶ 106.

      Under Oregon law, a person under the jurisdiction of the PSRB "shall be discharged at such time as the board, upon a hearing, finds by a preponderance of the evidence that the person is no longer affected by a qualifying mental disorder or, if so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment." ORS 161.351. Currently, the regulations define "substantial danger" as

> a risk that the person will inflict injury or harm to others. Evidence may include information about historical patterns of behavior, recent behavior, or verbal or physical threats, which have caused injury or harm or would place a reasonable person in fear of sustaining injury or harm. This determination does not require an imminent risk of injury or harm to others.

Or. Admin. R. 859-010-0005(8). Previously, the regulation had defined "substantial danger" as "a demonstration or previous demonstration of intentional, knowing, reckless or criminally negligent behavior which places others at risk of physical injury *because of* the person's qualifying mental disorder." Or. Admin. R. 859-010-0005 (2023) (emphasis added). Plaintiff argues that removing the "because of" requirement violates his Due Process rights.

The language in Plaintiff's Complaint mirrors case law concerning substantive due process in the confinement context. In particular, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). The State may confine a person if it shows "by clear and convincing evidence that the individual is mentally ill and dangerous." *Jones,* 463 U.S., at 362, 103 S.Ct., at 3048. "[T]he confinement's duration is…linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others." *Kansas v. Hendricks,* 521 U.S. 346, 363 (1997). The United States Supreme Court has "consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." *Id*. at 357.

Viewing the Complaint in the light most favorable to Plaintiff, their Due Process allegations are based on a violation of their substantive Due Process rights as explained in the case law outlined above. The question raised in the Complaint is whether PSRB's new rule violates Plaintiff's substantive Due Process rights. Defendants' arguments for dismissal contend that Plaintiff has failed to state a claim for a violation of **procedural** Due Process. *See* Mot. 10. Citing procedural Due Process cases, Defendants argue that the fact that Plaintiff was and is guaranteed hearings satisfies their right to Due Process. These arguments do not provide a basis to dismiss Plaintiff's substantive Due Process claim, which is based on the statutory and regulatory scheme rather than the failure of Defendant PSRB to provide for a hearing. If the statutory and regulatory scheme do not comply with substantive Due Process requirements, then a hearing applying that scheme would not address Plaintiff's Due Process concerns. *See Zinermon,* 494 U.S. at 125.  Defendants' briefing does not address this question. At the motion to

dismiss stage, and in the absence of briefing discussing and applying the appropriate law and substantive Due Process questions raised by Plaintiff's Complaint, the Court will not dismiss Plaintiff's Due Process claim. Accordingly, Defendants' motion to dismiss Plaintiff's Due Process claim is denied.

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss (ECF No. 23) is GRANTED in part and DENIED in part. Plaintiff's Due Process Claim (Count II) is dismissed as to Defendant PSRB only. Defendants' motion is otherwise denied.

DATED this 13th day of November 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge